UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ON DEMAND DIRECT RESPONSE, LLC AND ON DEMAND DIRECT RESPONSE III, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SHANA LEE MCCART-POLLACK D/B/A LOL BUDDIES ENTERPRISES,<br><br>Defendants. | Case No. 2:15-cv-01576-MMD-VCF<br><br>ORDER |

SHANA LEE MCART-POLLAK,

    Defendant/Counter Claimant,

v.

ON DEMAND DIRECT RESPONSE LLC, A Delaware company; ON DEMAND DIRECT RESPONSE III, LLC, a Delaware Company,

    Plaintiff/Counter-Defendants.

SHANA LEE MCCART-POLLAK,

    Defendant/Third Party Plaintiff,

v.

KEVIN HARRINGTON, an individual; AS SEEN ON TV, INC., a Florida company; SPIRAL TOYS LLC, a California company; MARK MEYERS, an individual; DRAGON-I TOYS LTD, California company; JAT AT PLAY INTERNATIONAL, a New York company; DIGITAL TARGET MARKETING, a Florida company; HUTTON MILLER, a Florida company; ECHO FACTORY, a California company; DOES I-S; ROE Business Entities I-X,

    Third-Party Defendants.

## I. INTRODUCTION

This dispute involves alleged theft of an idea for a stuffed animal that is able to send messages back and forth to another user. (ECF No. 1 at 4.) Plaintiffs initiated this action to prevent Defendant Shanna Lee McCart-Pollak ("Pollak") from engaging in an Internet and social media campaign targeting their product — the CloudPets stuffed animal — and its related mark. The Court subsequently dismissed Plaintiffs' claims for failure to prosecute. Pollak asserted counterclaims and third-party claims. Before the Court are motions to dismiss filed by the third-party defendants ("Third-Party Defendants"): (1) Jay Franco & Sons, Inc., Jay At Play International, Ltd., Echo Factory, Inc., Hutton Miller, LLC and Digital Target Marketing, LLC (collectively, "Jay Franco Parties"); (2) Spiral Toys LLC and Mark Meyers (collectively "Spiral Toys"); and (3) Kevin Harrington ("Harrington"). (ECF Nos. 108, 111, 163.) Pollak filed a "response to reply to opposition to motion to dismiss" and attached a "Rough Draft Amended Third-Party Complaint" ("PTPC") (ECF No. 143.) The Court construed Plaintiff's response as a motion to amend ("Motion to Amend"). (ECF No. 162.) Third-Party Defendants have responded (ECF Nos. 164, 165, 166) and Pollak has replied (ECF No. 172.)

The Court finds that Third-Party Defendants' motions to dismiss are rendered moot by Plaintiff's Motion to Amend. The Court therefore denies these motions as moot. The Court will also deny Pollak's Motion to Amend because the PTPC fails to state a claim, although the Court will grant Pollak leave to amend two claims against Harrington.

## II. RELEVANT BACKGROUND

Plaintiffs initially asserted claims based on Pollak's Internet and social media campaign targeting their product — the CloudPets stuffed animal — and its related mark. (ECF Nos. 1, 9 at 4-5.) Pollak claims that she designed the "Lots of Love Buddies" concept, which is the same idea as the CloudPets stuffed animal. (ECF No. 51 at 21-23.) According to Pollak, she attended a Chicago toy convention in November 2012, where she met Harrington, asked him if she could pitch her idea to him, gave him a brochure for her product, and explained that a patent was pending for the toy. (ECF No. 143-1 at

5-7.) When Pollak saw a commercial for CloudPets in June 2014, she posted several comments on her website and social media sites alleging that Kevin Harrington stole her Lots of Love Buddies product idea after receiving her promotional materials on or about November 15-17, 2012. (ECF Nos. 1 at 6, 143-1 at 7.) Pollak alleges that Harrington shared information about her idea, including her brochure and the materials she gave him, with Plaintiffs and other Third-Party Defendants. (ECF No. 143-1 at 8.)

On August 18, 2015, Plaintiffs moved for a temporary restraining order to prevent Pollak from posting what they considered to be false statements that were damaging their reputation and goodwill. (ECF No. 9.) The Court granted Plaintiffs' request and subsequently extended the injunction to the end of January 2016. (ECF Nos. 24, 73.) On May 24, 2016, the Court dismissed Plaintiffs' claims for failure to prosecute. (ECF No. 171.) In the meantime, on September 30, 2015, Pollak filed an answer that included a counterclaim and a third-party complaint. (ECF No. 51.)

## III.   LEGAL STANDARD

Under Rule 15 of the Federal Rules of Civil Procedure, a party may amend its complaint only by leave of the court once responsive pleadings have been filed and in the absence of the adverse party's written consent. *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 799 (9th Cir. 2001). The court has discretion to grant leave and should freely do so "when justice so requires." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (quoting Fed. R. Civ. P. 15(a)). Nonetheless, courts may deny leave to amend if it will cause: (1) undue delay; (2) undue prejudice to the opposing party; (3) the request is made in bad faith; (4) the party has repeatedly failed to cure deficiencies; or (5) the amendment would be futile. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

Although leave to amend a complaint is liberally granted under Rule 15, "leave to amend need not be granted if the proposed amended complaint would be subject to dismissal." *Bellanger v. Health Plan of Nev., Inc.*, 814 F. Supp. 914, 916 (D. Nev. 1992) (citing *United Union of Roofers, Waterproofers, and Allied Trades No. 40 v. Insurance*

1  *Corp. of Am.*, 919 F.2d 1398 (9th Cir.1990)); *see also Johnson v. Am. Airlines*, 834 F.2d
2  721, 724 (9th Cir. 1987) (stating that "courts have discretion to deny leave to amend a
3  complaint for 'futility,' and futility includes the inevitability of a claim's defeat on summary
4  judgment"). A properly pleaded complaint must provide "a short and plain statement of
5  the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell
6  Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require
7  detailed factual allegations, it demands more than "labels and conclusions" or a
8  "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S.
9  662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).
10 "Factual allegations must be enough to raise a right to relief above the speculative level."
11 *Twombly*, 550 U.S. at 555. A district court must accept as true all well-pleaded factual
12 allegations in the complaint; however, legal conclusions are not entitled to the
13 assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. at 679. Mere recitals of the elements of a
14 cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.
15 Where the complaint does not permit the court to infer more than the mere possibility of
16 misconduct, the complaint has "alleged — but it has not shown — that the pleader is
17 entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (internal quotation marks
18 and alteration omitted). A complaint must contain either direct or inferential allegations
19 concerning "all the material elements necessary to sustain recovery under *some* viable
20 legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*,
21 745 F.2d 1101, 1106 (7th Cir. 1984)).

22 Mindful of the fact that the Supreme Court has "instructed the federal courts to
23 liberally construe the 'inartful pleading' of *pro se* litigants," *Eldridge v. Block,* 832 F.2d
24 1132, 1137 (9th Cir. 1987), the Court will view Pollak's pleadings with the appropriate
25 degree of leniency.

26 **IV.   DISCUSSION**

27 Pollak relies on essentially the same allegations to support her claims against
28 Third-Party Defendants. Pollak claims that she pitched her Lots of Love Buddies concept

to Harrington, who did not tell her "that he would not keep her pitch in confidence." (ECF No. 143-1 at 13 (emphasis omitted).) According to Pollak, she asked Harrington if she could pitch her idea to him, he agreed and told her that her Lots of Love Buddies "was an interesting concept and asked her if he could keep her brochure so that he could look into it further." (*Id.* at 46.) Pollak alleges that Harrington "intentionally disclosed" her "Lots of Love Brochure" to Plaintiffs and Third-Party Defendants "with the intent to take . . . [the] brochure with her patent pending Concept IP to market without [her] knowledge." (*Id.* at 14.) Pollak claims that Spiral Toys "proceeded to develop Lots of Love Buddies pending IP, use her marketing materials to promote and licensing [sic] the toy, taking an affirmative act in furtherance of the unlawful objective in the development, selling, marketing and use" of her concept. (*Id.*) Pollak claims that Spiral Toys "in collusion acted on and intentionally entered into agreement with" other third-party defendants to "manufacture, market, and sell" the toys. (*Id.*) Plaintiff makes other allegations about the "collusion" among Plaintiffs and Third-Party Defendants in using her concept in the manufacturing, marketing and selling of the toys. (*Id.* at 15-16.) Thus, the gist of Pollak's claim is that Harrington purportedly tricked her into giving him information about her idea and then used that information to work with Plaintiffs and Third-Party Defendants to create, manufacture and market a product based on her idea.

Pollak's PTPC is 75 pages in length and contains 12 claims: civil conspiracy, conversion, larceny by trick, theft with false pretense, theft, breach of confidence, breach of implied covenant of good faith and fair dealing, breach of implied contract, breach of quasi-contract, breach of fiduciary duty, idea submission, fraud, unjust enrichment, and concert of action. The Court will address these claims in groups where appropriate.

### A. Civil Conspiracy

Civil conspiracy occurs when two or more people act "to accomplish an unlawful objective for the purpose of harming another," with resulting damage. *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 335 P.3d 190, 198 (Nev. 2014) (citing *Consol. Generator-Nevada, Inc. v. Cummins Engine Co.,* 971 P.2d 1251, 1256 (Nev.1998)). "To establish a

claim for civil conspiracy, a plaintiff must show: (1) the commission of an underlying tort; and (2) an agreement between the defendants to commit that tort." *Eastwood v. Lehman Bros. Bank, FSB*, No. 3:09-CV-00656-LRH, 2010 WL 2696479, at *2 (D. Nev. July 2, 2010) (citing *GES, Inc. v. Corbitt,* 21 P.3d 11, 15 (Nev.2001)). "Further, the cause of action must be pled with particular specificity as to 'the manner in which a defendant joined in the conspiracy and how he participated in it.'" *Eastwood*, 2010 WL 2696479, at *2 (citing *Arroyo v. Wheat,* 591 F. Supp. 141, 144 (D.Nev.1984)).

Pollak fails to allege facts sufficient to support this claim. It is unclear what Pollak claims the underlying torts are, if there are any. In one part of the PTPC, she states, "[T]herefore, they [Jay at Play and Echo] are aware of two conspiracies [sic] the tort of theft and conversion and additional torts listed below." (ECF No. 143-1 at 22.) Moreover, Pollak does not allege any facts that demonstrate there was an agreement between Plaintiffs and Third-Party Defendants to commit a tort. For example, Pollak would need to plead that Third-Party Defendants had an agreement to steal her idea prior to her meeting with Harrington.[1] Instead, Pollak seems to misunderstand the law governing civil conspiracy: she repeatedly alleges that Third-Party Defendants discussed her due to the demand letter she sent, but she has not demonstrated that such discussion was connected to the alleged underlying tort. Pollak further alleges that Spiral Toys, Mark Meyers, Jay at Play International, and On Demand "are fully aware" of the demand letter she sent them, and "therefore, they are also fully aware [sic] the harm which they would be inflicting on [Pollak]." (ECF No. 143-1 at 23.) This is insufficient to allege civil conspiracy because Third-Party Defendants would have had to commit the tortious act with the intent to harm Pollak. Stating that Third-Party Defendants "were aware" they were harming her because of a letter she sent them two years after telling Harrington about her concept is insufficient to establish an agreement to commit a tort.

///

---

[1] However, the Court notes that stealing an idea, without more, is not a tort. *See Smith v. Recrion Corp.*, 541 P.2d 663, 665 (Nev. 1975) ("Generally, abstract ideas will not be protected without a showing of 'concreteness' and 'novelty.'")

Even accepting all her allegations as true and drawing all inferences in her favor, the facts are not sufficient to support her civil conspiracy claim. Moreover, based on her allegations and the fact that this is Pollak's second attempt at stating this claim, the Court finds that amendment would be futile. The Court denies leave to amend for the civil conspiracy claim.

### B.     Conversion

Conversion is "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights." *Custom Teleconnect, Inc. v. Int'l Tele-Servs., Inc.,* 254 F. Supp. 2d 1173, 1182 (D. Nev. 2003). Originally, intangible property could not be converted; however, the Supreme Court of Nevada expressly rejected that notion and adopted the Ninth Circuit's "*Kremen* test" for determining whether a person has a property interest in the subject property. *M.C. Multi-Family Dev., L.L.C. v. Crestdale Associates, Ltd.*, 193 P.3d 536, 543 (Nev. 2008). The *Kremen* test provides that: "a property right exists when (1) there is an interest capable of precise definition, (2) the interest is capable of exclusive possession or control, and (3) the putative owner has established a legitimate claim to exclusivity." *Id.*

Pollak asserts that she approached Harrington, asked him if she could "pitch" her idea to him, and he said yes. (ECF No. 143-1 at 6.) While they were talking in a corner, "out of ear shot," he said she had an interesting idea and asked for her brochure, which she gave him. *Id.* Pollak alleges Harrington disclosed her "brochure and literally using all of its contents; [sic] the marketing, the similarities, the drawings . . . and patent pending," defendants which deprived her of ever being able to market her idea. (*Id.* at 24-25.)

Assuming Pollak's Lots of Love Buddies concept satisfies the *Kremen* test, she nevertheless fails to state a claim. Accepting Pollak's allegations as true, Harrington did not "wrongfully exert" control over Pollak's idea or the materials for her idea. According to Pollak, she voluntarily gave the materials to Harrington and asked if she could "pitch" her idea to him. He agreed. Pollak does not allege that he made an explicit promise to

not use her idea or to not disclose her idea. The PTPC thus fails to state a claim and the Court will deny leave to amend as the Court finds amendment would be futile.

### C. Larceny by Trick, Theft with False Pretense and Theft

Larceny by trick is not a codified law in Nevada. The various types of larceny are codified by NRS §§ 205.2175-205.2707. Under NRS § 205.0833 and NRS § 205.380, it is illegal to obtain property from another person using false pretenses. In each of these statutes, there is no explicit private right of action to prosecute these crimes. The Court will deny leave to amend these three claims for larceny and theft as amendment would be futile.

### D. Breach of Confidence and Breach of Fiduciary Duty

Under Nevada law, "[a] fiduciary relationship is deemed to exist when one party is bound to act for the benefit of the other party. Such a relationship imposes a duty of utmost good faith." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 880-81 (9th Cir. 2007) (quoting *Hoopes v. Hammargren,* 725 P.2d 238, 242 (1986)). There are categories of relationships that are fiduciary relationships as a matter of law. *See id.* (listing insurers and insured, attorney and client, spouses, fiancés, corporate officers or directors and corporation as fiduciary relationships). In relationships falling outside these categories, Nevada law recognizes a duty owed in "confidential relationships," where "one party gains the confidence of the other and purports to act or advise with the other's interests in mind." *Id.* (quoting *Perry v. Jordan,* 111 Nev. 943, 900 P.2d 335, 338 (1995)).

The allegations in the PTPC do not show the existence of a confidential relationship to support claims for breach of confidence and breach of fiduciary duty. In fact, they do not show the existence of any relationship between Pollak and Third-Party Defendants. Pollak quotes a description of the conference where she met Harrington as a place "with unrivaled opportunities for private and confidential meetings . . ." and "the opportunity to represent your idea directly to top executives for licensing and/or for advice on moving forward with design, manufacturing, outsourcing, packaging, distribution and marketing." (ECF No. 143-1 at 30.) Even accepting these allegations as

8

true, they do not show a confidential relationship with Harrington. In fact, according to Pollak, she asked Harrington if she could "pitch" her idea to him and he did not tell her "that he would not keep her pitch in confidence." (*Id.* at 13 (emphasis omitted).) Thus, the Court will deny leave to amend to add these two claims as amendment would be futile.

### E.  Contract Based Claims: Implied Covenant of Good Faith and Fair Dealing, Implied Contract and Idea Submission

Every contract has an implied covenant of good faith and fair dealing. *Ins. Co. of the W. v. Gibson Tile Co.*, 134 P.3d 698, 702 (Nev. 2006). "Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005) (citing *Keddie v. Beneficial Insurance, Inc.,* 580 P.2d 955, 956 (Nev. 1978)). A contract implied in fact requires a showing that "the parties intended to contract and promises were exchanged, the general obligations for which must be sufficiently clear." *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 256 (Nev. 2012); *see Smith,* 541 P.2d at 664 (for a contract to be implied in fact, "the court would necessarily have to determine that both parties intended to contract[.]"). The Nevada Supreme Court has addressed protection for the submission of an idea through contract principles. *Smith*, 541 P.2d 663 (addressing allegations that plaintiff shared a concept and brochure for a recreational vehicle park to be constructed and operated as part of a luxury hotel). "An abstract idea cannot be protected by an express or implied contract unless the contract was made before the disclosure of the idea." *Smith*, 541 P.2d at 669.

Pollak relies on the allegations relating to her encounter with Harrington and further adds that "an implied-in-fact contract or the very least a quasi contract [sic] umbrella was established among the attendees and . . . Harrington." (EFC No. 143-1 at 34.) The allegations in the PTPC are not clear as to the terms of the purported contract — such as the offer, acceptance and consideration — and they do not show an intent to contract on the part of either party, let alone Harrington. No purported agreement was

9

made before Pollak shared her concept with Harrington. To the extent the offer was Harrington's alleged promise to contact Pollak (based on her allegations that Harrington "breached the quasi contract [sic] when he failed to get back in contact with" Pollak (*id.* at 41), Pollak does not allege acceptance by Harrington (i.e., that he agreed he would call her back) or consideration for the offer (i.e., what each party received in exchange for the promise). Accepting the allegations as true, Pollak fails to state a claim against Third-Party Defendants, and the Court further finds that amendment would be futile.

### F. Fraud

In Nevada, the elements of fraud include: (1) a false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and, (4) damage to the plaintiff as a result of relying on the misrepresentation. *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998). If the complaint claims multiple defendants committed fraud, "Rule 9(b) does not allow a complaint merely to lump multiple defendants together but require[s] plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Capitol W. Appraisals, LLC v. Countrywide Fin. Corp.*, 759 F. Supp. 2d 1267, 1271 (W.D. Wash. 2010), *aff'd*, 467 F. App'x 738 (9th Cir. 2012) (quoting *Swartz v. KPMG LLP,* 476 F.3d 756, 764-65 (9th Cir.2007).

Pollak relies on the same allegations that she pitched her concept to Harrington and that he would have at that point made a "gut decision not to work with" her. (ECF No. 143-1 at 55.) Yet, "Harrington knowingly with the intent to deceive . . . asked to keep her brochure so that he would have access to all of her hard work, marketing, and concept IP for dream of the Lots of Love Buddies Concept." (*Id.* at 51.) She further alleges that Harrington intended to deceive her when he asked for her business card so that he could get back to her but he did not contact her. (*Id.*) Pollak makes allegations

10

about what Harrington purportedly did with her concept in sharing it with the other Third-Party Defendants.

First and foremost, Pollak fails to allege that any of the Third-Party Defendants, other than Harrington, had any interaction with her, let alone made any statements to her. Thus, based on her allegations and the fact that this is Pollak's second attempt at stating this claim, the Court finds that amendment would be futile.

With respect to Harrington, Pollak's allegations do not identify what false statements Harrington made to her or that he did so with the intent to induce her to act. She does not allege that he falsely represented to her that he wanted her brochure and would contact her about her idea with the intent to induce her to give the materials to him. Indeed, she does not allege that Harrington made any false statements to her to get her to give him her brochure. According to Pollak, Harrington said her Lots of Love Buddies "was an interesting concept and asked her if he could keep her brochure so that he could look into it further." (ECF No. 143-1 at 46.) She does not allege that this statement was false. Thus, accepting Pollak's allegations as true, she fails to state a claim for fraud against Harrington as well. However, the Court cannot find that amendment would be futile and will grant Plaintiff leave to amend.

### G.     Unjust Enrichment and Quasi Contract

"The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another [or should pay for]." *Leasepartners Corp.*, 942 P.2d 182, 187 (Nev. 1997) (quoting 66 Am. Jur. 2d *Restitution* § 11 (1973)). "Unjust enrichment exists when the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof. *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012). Moreover, the plaintiff must show some direct

relationship or dealings between the plaintiff and the defendant. *Zalk-Josephs Co. v. Wes Cargo, Inc.*, 366 P.2d 339, 342 (Nev. 1961).

Under Pollak's theory, Harrington took her idea and brochure, including all the work that went into her concept, which allowed Third-Party Defendants to bring the CloudPets to market. (ECF No. 143-1 at 57-58.) Pollak claims Third-Party Defendants "were enriched when they received royalties off of the sale of the CloudPets Product." (*Id.* at 59.) Pollak further alleges that "Mark Meyers, Spiral Toys LLC and/or On Demand Direct Response LLC, On Demand Direct Response III LLC then proceeded to sign a sublicense agreement with Jay at Play Int'l to market, manufacture and distribute CloudPets taking an affirmative act in the furtherance of the unlawful objective in the selling, marketing, and use of [Pollak's idea] and therefore have been unjustly enriched off of the money earned for the work performed and/or sales of the unlicensed products to [Pollak's] detriment." (*Id.*) Pollak also alleges Jay at Play Int'l, Hutton Miller. Digital Target Marketing, Echo Factory, As Seen On TV, Inc., were unjustly enriched by the money they made from various agreements they had to market and distribute the CloudPets Product. (*Id.* at 58-62.)

Assuming the allegations in the PTPC as true, Pollak fails to state a claim against Harrington. However, the Court cannot find that amendment would be futile. Pollak may be able to amend her claim to allege that she conferred a benefit on Harrington, and that he accepted and retained that benefit under circumstances such that retention without payment would be unfair. The Court thus will grant Pollak leave to amend with respect to this claim.

The Court agrees with the Jay Franco Parties and Spiral Toys that the allegations against them do not show any connection between them and Pollak to support a claim for unjust enrichment. Based on her allegations and the fact that this is Pollak's second attempt at stating this claim, the Court finds that amendment would be futile.

///

///

### H. Concert of Action

"To be jointly and severally liable under NRS § 41.141(5)(d)'s concert of action exception, the defendants must have agreed to engage in conduct that is inherently dangerous or poses a substantial risk of harm to others. *GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001). Thus, this requirement is met when the defendants agree to engage in an inherently dangerous activity, with a known risk of harm, that could lead to the commission of a tort. *Id.* (citing *Walls v. Jacob North Printing Co., Inc.*, 618 N.W.2d 282, 285 (Iowa 2000)). Pollak's allegations involved an alleged theft of an idea, which is not an inherently dangerous activity. Pollak fails to state a claim and leave to amend will be denied as amendment would be futile.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of Pollak's Motion to Amend.

It is therefore ordered that Third-Party Defendants' motions to dismiss (ECF Nos. 108, 111, 163) are denied as moot.

It is further ordered that Pollak's motion to amend (ECF No. 143) is denied. The Court grants leave to amend the third-party complaint to assert two claims for unjust enrichment and fraud against Harrington to the extent Pollak is able to address the deficiencies identified in this Order.

It is further ordered that the claims against Third-Party Defendants, other than Harrington, are dismissed. The Clerk is directed to enter judgment in favor of the following Third-Party Defendants: Jay Franco & Sons, Inc., Jay At Play International,

///
///
///
///

Ltd., Echo Factory, Inc., Hutton Miller, LLC, Digital Target Marketing, LLC, Spiral Toys LLC and Mark Meyers.

DATED THIS 30th day of September 2016.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　MIRANDA M. DU
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE